Everton KEENE, Plaintiff,

v.

HARTFORD HOSPITAL, et al., Defendants.

No. CIV.A. 300–CV–250 (JCH).

United States District Court, D. Connecticut.

June 11, 2002.

Charles G. Parks, Jr., Parks & Associates, Stamford, CT, for plaintiff.

Brenda A. Eckert, Jennifer Brown Mailly, Gregg Peter Goumas, Shipman & Goodwin, Hartford, CT, Neil B. Stekloff, Paul, Hastings, Janofsky & Walker, Stamford, CT, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 41] AND MOTION TO STRIKE [DKT. NO. 69]

HALL, District Judge.

In this case, the plaintiff, Everton Keene ("Keene"), alleges that his former employer and supervisors, Hartford Hospital, Raymond Kelley, William Whitehead, and Richard McAloon ("the defendants"), discriminated against Keene on the basis of race, ethnicity, and national origin; harassed Keene because of his race and ethnicity; and retaliated against him for complaining about discrimination in the course of his employment and filing the instant action. Keene alleges that defendant Hartford Hospital violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and that all defendants violated the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Further, Keene contends that the defendants' actions state a claim for intentional infliction of emotional distress. The defendants have moved for summary judgment on all counts.

## I. FACTUAL BACKGROUND [1]

Keene is a forty-four year old black male from Jamaica. On April 22, 1986, he filled out an application for the Security Department at Hartford Hospital. On September 8, 1986, Keene started work as a Security Officer. Over the next ten years, his employment proceeded without significant incident, and, with the exception of below average ratings in 1987 for report writing and 1991 for attendance and dependability, Keene received mixed performance evaluations each year at or above average in every category.

On March 20, 1996, Keene and another Security Officer, Andrew Paul ("Paul"), engaged in a heated exchange over the Security Department's radios. Over the radio, Paul stated that Keene should return to Jamaica. Keene complained about Paul's comment to his supervisors.

On June 26, 1996, Paul reported Keene for entering the cashier's office in Hartford Hospital's cafeteria without authorization and remaining in the office to eat a meal. Although no written policy prohibited Keene's actions, Kelley and Keene considered his conduct inappropriate and subject to discipline. While investigating the incident, Keene's supervisors inquired whether he paid for the meal, without any prior indication that Keene did not purchase the food. Keene was not disciplined

---

1. The court notes that this case involves numerous allegations of discriminatory or retaliatory incidents over several years. In this background, the court only provides a brief overview of the facts taken in the light most favorable to the plaintiff. As necessary, other circumstances are raised in the Ruling's substantive discussion as examples.

In addition, the court notes that the plaintiff failed to file a proper 9(c)(2) Statement that would provide any assistance in identifying factual disputes that may exist in the record. *See* D. Conn. Loc. R. Civ. P. 9(c); *N.S. ex rel. P.S. v. Stratford Bd. of Educ.*, 97 F.Supp.2d 224, 227 (D.Conn.2000) ("Otherwise the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties."); *Cooper v. Ragaglia*, 3:96–CV–530 (EBB), 1999 WL 1067680, at *2 (D.Conn. Oct. 19, 1999) ("The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court."). Where the plaintiff alleges over twenty individual events as the basis for his claims, he should not be heard to complain that the defendants' 9(c)(1) Statement is lengthy. Despite the plaintiff's inadequate pleading, in light of the nature and extent of the allegations in this case and the court's obligation to test the sufficiency of the defendants' motion for summary judgment, the court has reviewed the entire record. *See Amaker v. Foley*, 274 F.3d 677, 680–81 (2d Cir.2001). The court hereby places plaintiff's counsel on notice, however, that any future violations of Local Rule 9(c) in this or another case may result in monetary sanctions against counsel or dismissal of his client's case.

for entering the cashier's office. After the June incident, Keene believed that other security personnel would watch him while he was in the cafeteria.

On September 24, 1996, Keene received his performance evaluation for 1996. Unlike his previous evaluations, Keene did not receive above average ratings in any category, albeit he did not receive any below average ratings either.[2] In the comment section, Keene's supervisor, William Whitehead ("Whitehead"), referred to a reprimand for the June incident, unaware that Kelley had not disciplined Keene. Whitehead consulted with Kelley when Keene protested and learned that Keene had not been disciplined. Accordingly, he struck the comment from Keene's evaluation, but did not change the ratings. Keene complained to Kelley, who also refused to change the evaluation.

In October and November, Keene complained about problems with the assignment of overtime by Whitehead and Loretta Deschenes, the Security Officer in charge of scheduling overtime assignments. Also, in November, the Security Department investigated sexual harassment concerns against Keene without receiving a formal complaint. On November 18, 1996, Keene submitted an Employee Grievance that articulated the above incidents and others, claiming discrimination and harassment. On February 4, 1997, he filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

On April 15, 1997, Keene reported a note with racial epithets and ethnic and nationality references that threatened retaliation for Keene filing a CHRO complaint. Hartford Hospital alleges that it attempted to investigate, but Keene ruined the investigation by talking to other security personnel about the note. On October 17, 1997, Keene again received a performance evaluation with only average ratings and no substantive comments.

In November 1998, the CHRO, in summary disposition, found reasonable cause for Keene's complaint. Subsequently, another Security Officer, Errol James ("James"), who was interviewed during the reasonable cause investigation, threatened Keene with physical violence. The defendants terminated that individual's employment. In December 1998, Whitehead did not schedule Keene as a charge officer, which is assigned on a rotating basis. Also, in December 1998, Keene learned about a petition circulating in the Security Department that accused him of creating dissension in the department that led to James's termination. Keene complained to his supervisors, but would not provide a copy of the petition. The defendants claim that they could not investigate the petition without a copy of the document. Further, in December 1998, several security officers filed complaints with the Hartford Police Department and the Occupational Health and Safety Administration that Keene threatened them. The defendants investigated the complaints.

On February 24, 1999, Keene filed another CHRO complaint that addressed the above incidents and others that occurred after the first complaint. On February 7,

2. Based on the evidence submitted, the court is uncertain whether Keene's 1996 performance evaluation affected his pay or benefits because neither party included the corresponding "Compensation Decision Form." *See* Pl.App. [Dkt. No. 65], Exh. 1–G; Def.App. [Dkt. No. 43], Exh. 33. The court notes, however, that other evidence indicates that performance appraisals had an impact on compensation. *See* Pl.App., Exhs. 1–A to –F (listing amounts or other notations for "merit increases"); Def.App., Exh. 38 (Keene's 1997 Compensation Decision Form describing permissible percentage increases for different overall ratings).

2000, Keene filed the instant case. During discovery, the defendants gained access to Keene's prior employment history at Aetna, where he worked as a security guard. Based on the information discovered, the defendants determined that Keene falsified his employment application. The defendants terminated Keene's employment at Hartford Hospital on December 31, 2001. Keene amended his complaint on March 19, 2002 to include his termination as a basis for his claim in the instant case.

## II. MOTION TO STRIKE

"A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion." *Newport Elec., Inc. v. Newport Corp.*, 157 F.Supp.2d 202, 208 (D.Conn.2001). The moving party must be specific in regards to what it is seeking to have striken and must set forth reasons for why the materials should not be considered by the court. *E.g., FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). A party can make a motion to strike affidavits if they are not made on the basis of personal knowledge. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988). A motion to strike can also be used to challenge documentary evidence that has not been properly authenticated. *E.g., Dedyo v. Baker Eng'g N.Y., Inc.*, 1998 WL 9376, at *4 (S.D.N.Y. Jan.13, 1998). However, "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The defendants move to strike several exhibits filed by the plaintiff in opposition to the motion for summary judgment; the plaintiff did not file a pleading responsive to the motion to strike.

First, the defendants move to strike the verified answers from the CHRO investigation on the basis of completeness and hearsay. The defendants claim that the plaintiff did not attach the original exhibits to the verified answers. The defendants' completeness objection is not a proper ground to strike the document because they could have introduced the missing exhibits. Fed.R.Evid. 106; *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170–72, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). Further, the defendants' hearsay objection fails because the verified answers are admissions by Hartford Hospital. Fed. R.Evid. 801(d)(2) (*e.g.*, "A statement is not hearsay if ... [it] is offered against a party and is ... a statement of which the party has manifested an adoption or belief in its truth"). Therefore, the court will not strike the verified answers.[3]

■ Second, the defendants move to strike the reasonable cause determination by the CHRO. Factual findings in public records, which would include "conclusions or opinions" based on those facts, made after an investigation authorized by legal authority are presumptively admissible absent "information or other circumstances [that] indicate lack of trustworthiness." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir.2000) (citing Fed.R.Evid. 803(8)(C); *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir.1991)). "Findings of the EEOC or equivalent state agencies" fall within the ambit of the public records exception to hearsay. *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir.1998).

The party seeking to strike public records has the burden to establish lack of trustworthiness. *Bridgeway*, 201 F.3d at 143 (citing *Ariza v. City of New York*, 139

---

**3.** The court notes, however, that it did not rely on any evidence that was presented only in the verified answers. Therefore, the court alternatively concludes that the motion to strike those exhibits is moot.

F.3d 132, 134 (2d Cir.1998)); *see* Fed. R.Evid. 803(8)(C) advisory committee's note ("Hence the rule . . . assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present."). In assessing trustworthiness, the court considers "(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; [and] (4) [any motive of the investigator inconsistent with accuracy]." Fed.R.Evid. 803(8)(C) advisory committee's note (citations omitted). The court may consider other factors, including the finality of the report or record as an official finding. *Gentile v. County of Suffolk*, 129 F.R.D. 435, 458 (E.D.N.Y.1990) (citing *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 742–43 (2d Cir.1989)). Ultimately, the court has the discretion to determine "whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *City of New York v. Pullman Inc.*, 662 F.2d 910, 914 (2d Cir. 1981).

In this case, the CHRO document is a preliminary investigation into whether discrimination *could* have occurred. *See* Pl. App., Exh. 8, at 29. The findings and determination were subject to final review and hearing by a CHRO Hearing Officer. *Id.* Exercising its discretion, the court strikes the CHRO reasonable cause determination.[4]

Third, the defendants move to strike transcripts of CHRO interviews with Diane Golding, an employee at Hartford Hospital, and defendant Whitehead because the transcripts are not contemporaneous records of the interviews, lack of

completeness, and hearsay. The defendants do not raise any arguments regarding authentication and cite no precedent to justify striking subsequent certified transcripts of contemporaneous audio recordings during an official investigation. *See* Fed.R.Evid. 1001(1), 1003, 1005. Also, as noted, completeness is not a basis to strike a document. Fed.R.Evid. 106; *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170–72, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). Finally, the court sustains the hearsay objection to Diane Golding's statements, but concludes that Whitehead's statements are admissions of a party not subject to hearsay objections. Fed. R.Evid. 801(d)(2). The transcript of Diane Golding's statement is striken, but the court does not strike the transcript of Whitehead's statement.[5]

Fourth, the defendants move to strike several exhibits for lack of authentication. The court strikes Exhibits 15, 16, 20, 24, 30, and 33 because the plaintiff has not authenticated the documents.

Finally, the defendants move to strike portions of the plaintiff's affidavit for lack of personal knowledge and because the statements in the affidavit contradict Keene's deposition testimony. First, the defendants define "surveillance" in order to contradict the plaintiff's allegations in the affidavit at paragraphs 9, 26, 27, and 29. While denotation may drive most legal analysis, a person's firsthand observations should not be so limited. The court accepts that affidavits reflect the complexity of language. The defendants' objection does not undermine the fact that Keene personally observed some event and recorded that fact in the affidavit. If the

---

4. The court notes, however, that it did not rely on any evidence that was presented only in the reasonable cause determination. Therefore, the court alternatively concludes that the motion to strike that exhibit is moot.

5. The court notes, however, that it did not rely on any evidence that was presented only in the interview transcripts. Therefore, the court alternatively concludes that the motion to strike those exhibits is moot.

defendants disagree with his articulation of that event, they may present evidence to the contrary or cross-examine him on his use of particular words. However, Keene has personal knowledge of the events that he has described, in his own words. Further, the court notes that his affidavit does not contradict his earlier sworn testimony. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806–07, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996). The court does not strike paragraphs 9, 26, 27, or 29.

Second, the defendants present a similar argument with regard to paragraph 20, where the defendants take issue with Keene's comment that Officer Luzietti was present "for no apparent reason." The court construes that statement as Keene's observation that he could conceive of no reason why Luzietti would be present at a particular location. Keene's allegation makes no representation with regard to whether Luzietti actually had a reason to be at that location. Again, the defendants could cross-examine Keene or introduce other evidence. The court does not strike paragraph 20.

Third, the defendants argue that Keene contradicted his deposition testimony with the allegation at paragraph 28 that he suffered a minor injury when Luzietti poked him. In the portions of his deposition testimony cited by the defendants, Keene never states that Luzietti did not injure him. Instead, he comments that Luzietti's poking pushed his shoulder backward and caused pain because Keene had had a shoulder operation that made the area tender. Accordingly, there is no contradiction between the deposition and Keene's affidavit. The court does not strike paragraph 28.

Fourth, the defendants challenge the scope of Keene's allegation with regard to the December 10, 1997 holiday dinner in paragraph 33. The court agrees that Keene does not provide a basis for his knowledge that he was the only individual excluded from the dinner. However, Keene does have sufficient personal knowledge to state that Whitehead distributed tickets to other second-shift security employees and that Keene did not receive a ticket. Therefore, the court would strike from paragraph 33 the word "all" in the first sentence and the phrase "the only second shift person" in the second sentence.[6]

Fifth, the defendants challenge Keene's personal knowledge of electronic monitoring in the cashier's office. The court concludes that Keene's allegation merely indicates that a security camera was used in the cashier's office. The court does not strike paragraph 36.[7]

Sixth, the defendants move to strike the portion of paragraph 41 that refers to defendant Whitehead as the organizer for the petition critical of Keene. The court agrees that Keene has not provided a factual basis for his statement and, therefore, strikes any reference to Whitehead from paragraph 41.[8]

Seventh, the defendants argue that Keene has no personal knowledge of a conspiracy or the object of any conspiracy

---

**6.** The court notes that other evidence state the facts to which paragraph 33 has been limited. Therefore, to the degree that the court relies on those facts, it does not rely on paragraph 33 as its basis.

**7.** The court notes, however, that it did not rely on any evidence that was presented only in paragraph 36. Therefore, the court alternatively concludes that the motion to strike that allegation is moot.

**8.** The court notes, however, that it did not rely on any evidence that was presented only in paragraph 41. Therefore, the court alternatively concludes that the motion to strike that allegation is moot.

by several named Security Officers. However, conspiracies may be proven by circumstantial evidence because they are "by their very nature secretive operations." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Keene could reasonably infer from the complaint filed by the officers that they sought to have him arrested and fired because that would be a logical consequence of the officers' actions. The court does not strike paragraph 43.[9]

Eighth, the defendants argue that Keene has no personal knowledge for the claims made in paragraph 44 with regard to the OSHA complaint. The court agrees and strikes paragraph 44.[10]

Finally, the defendants claim that Keene has no personal knowledge for some statements made in paragraph 46. Based on personal observation, Keene knew that he completed the survey and placed it in his box. Further, he knew that it was later missing. He has a reasonable basis to infer from his other problems in the Security Department and the fact that Kelley received the survey in his box that department personnel removed the survey, but he has not presented any reasonable basis for his statement that they removed the survey to read his response to a particular question. Accordingly, the court strikes the portion of paragraph 46 that refers to the motivation of the individuals who removed Keene's survey.[11]

## III. MOTION FOR SUMMARY JUDGMENT

Summary judgment is only appropriate when no genuine issue of material fact

exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Hermes Int. v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2nd Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994)). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)) (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo,* 22 F.3d at 1223–24.

In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255,

---

**9.** The court notes, however, that it did not rely on any evidence that was presented only in paragraph 43. Therefore, the court alternatively concludes that the motion to strike that allegation is moot.

**10.** The court notes, however, that it did not rely on any evidence that was presented only in paragraph 44. Therefore, the court alter-

natively concludes that the motion to strike that allegation is moot.

**11.** The court notes, however, that it did not rely on any evidence that was presented only in the remainder of paragraph 46. Therefore, the court alternatively concludes that the motion to strike that allegation is moot.

106 S.Ct. 2505. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

## A. Title VII

The initial burden in a disparate treatment claim brought under Title VII is on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000) (citing *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment decision. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. *Id.* As the Supreme Court explained in *Reeves:*

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147, 120 S.Ct. 2097 (citations omitted). Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. *Id.; see also Zimmermann v. Assoc. First Capital Corp.,* 251 F.3d 376, 381–82 (2d Cir.2001). A finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendants' reason is pretextual and any other evidence presented in the case when determining if the plaintiff has sustained his burden. *Zimmermann,* 251 F.3d at 381–82.

■ The defendants challenge whether Keene suffered an adverse employment action that would state a prima facie case. Although reprimands or negative performance evaluations alone would not qualify as an adverse employment action, *see Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 86 (2d Cir.2001), in this case,

there are material issues of fact that preclude summary judgment—for example, regarding whether Keene's lower evaluations had an effect on his compensation and whether Whitehead maintained notes and files on past sexual harassment allegations that were not pursued against Keene and relied on those notes in making employment decisions. The defendants also claim Keene does not state a prima facie case with regard to his problems with overtime hours or his termination. Material issues of fact—for example, regarding the nature and extent of the numerous claimed incidents of disparate treatment that plaintiff argues culminated in his termination and whether the plaintiff was required to disclose his Aetna employment and whether, if disclosed, the defendants' reason for termination is pretextual—preclude summary judgment on those issues. Finally, the defendants claim that Keene's allegations regarding the holiday-dinner ticket fail to state a prima facie case. The court does not consider the circumstances surrounding the holiday-dinner ticket a separate claim of disparate treatment; rather, the court construes Keene's allegations in that regard as further evidence of pretext to rebut any non-discriminatory reason put forward by the defendants.

█ Keene also makes a claim that Hartford Hospital created a hostile or offensive environment through its handling of conduct by other employees. Material issues of fact preclude summary judgment on that claim—for example, with regard to the reasonableness of the defendants' actions in response to the racial note received by Keene and the petition criticizing Keene. Accordingly, the court denies the defendants' motion for summary judgment on Keene's Title VII claims.

### B. Section 1981

The court applies the same standard for section 1981 claims as applied to Title VII

causes of action. *Martin v. Citibank, N.A.*, 762 F.2d 212, 216–17 (2d Cir.1985). One difference, however, is the liability of individuals under § 1981. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74–75 (2d Cir.2000). Individual liability under § 1981 requires that, in addition to the Title VII standard, the plaintiff establish "some affirmative link to causally connect the actor with the discriminatory action." *Id.* at 75 (quoting *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir.1991)). For the same reasons articulated with reference to the Title VII claims, the court concludes that material issues of fact preclude summary judgment.

### C. Intentional Infliction of Emotional Distress

█ In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires 'conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266, 597 A.2d 807 (1991) (quoting *Petyan*, 200 Conn. at 254 n. 5, 510 A.2d 1337). The plaintiff must "prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life." *Whelan v. Whelan*, 41 Conn.Supp. 519, 588 A.2d 251, 252 (1991). "[L]iability clearly does not extend to mere insults, indigni-

ties, threats, annoyances, petty oppressions, or other trivialities." *Hiers v. Cohen,* 31 Conn.Supp. 305, 329 A.2d 609, 611 (1973).

■ The plaintiff has not produced evidence that raises a material issue of fact with regard to whether the defendants' conduct was extreme and outrageous. Taking the defendants' conduct throughout Keene's employment, the court concludes that their actions do not exceed all bounds tolerated by decent society. Therefore, the court grants summary judgment on the claim of intentional· infliction of emotional distress.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Strike [Dkt. No. 69] is GRANTED IN PART and DENIED IN PART. The Defendants' Motion for Summary Judgment [Dkt. No. 41] is GRANTED IN PART and DENIED IN PART. With regard to the claim for intentional infliction of emotional distress, the court grants the defendants' motion. In all other respects, the motion is denied. Further, since the plaintiff's proposed surreply only clarifies evidence already in the record, the Plaintiff's Motion to File Sir [sic] Reply [Dkt. No. 74] is GRANTED. Finally, the court notes that the Plaintiff's Motion for Extension [Dkt. No. 27–2] is moot in light of the endorsement to Defendants' Motion [Dkt. No. 33].

**SO ORDERED.**