**Lester N. POKORNE, Plaintiff,**

v.

**Donald A. GARY and Real–Vest Corporation, Defendants.**

No. 3:02CV267 (GLG).

United States District Court,
D. Connecticut.

Sept. 12, 2003.

Margaret E. Haering, Hurwitz & Sagarin, Milford, CT, for plaintiff.

Robert A. Harris, Joel H. Thompson, Zeldes, Needle & Cooper, Bridgeport, CT, Lawrence P. Weisman, Weisman & Lubell, Westport, CT, for defendants.

## *MEMORANDUM DECISION*

GOETTEL, District Judge.

The claims in this case arise out of a dispute between former business partners. The plaintiff, Lester N. Pokorne, is suing the defendants, Donald A. Gary and Real–Vest Corporation, for funds he claims should have been distributed, in part, to him following the sale of certain property. The plaintiff asserts two central claims: breach of fiduciary duty and breach of contract. He asserts five additional claims; three of those claims, namely, unjust enrichment, accounting, and constructive trust are dependant and derivative of his fiduciary duty claim and, the remaining two, breach of the covenant of good faith and fair dealing and conversion are dependent upon and derivative of his breach of contract claim. The defendants have moved for summary judgment [**Doc. 31**]. The plaintiff seeks to strike [**Doc. 48**] several documents, or portions thereof, proffered in support of the defendants' motion for summary judgment, and has moved also for summary judgment [**Doc. 42**].

For the reasons set forth below, the defendants motion is GRANTED and the plaintiff's motions are DENIED.

**Facts**

Pokorne and Gary owned a close corporation known as Real–Vest, which, through its subsidiaries, engaged in various real estate transactions throughout the nation. Pokorne owned forty percent of Real–Vest's stock and was its vice president; Gary was its president and owned the remaining stock. After a falling out between the two, Pokorne was terminated as vice president for cause. Subsequently, he negotiated the transfer of his interest in the company to Gary through a Stock Purchase Agreement (Stock Agreement), and he resigned from the company and all of its subsidiaries and affiliates. In consideration, Pokorne was to receive cash and a non-recourse note from the defendants. In further consideration and pursuant to Section 6(b) of the Stock Agreement, Pokorne was to receive proceeds distributable under Section 11.04 of the Beaudry I Partnership Agreement for the sale of property[1] owned by the partnership.[2] The parties executed also an Assignment of Proceeds (Assignment) altering the percentage of proceeds to be distributed to Pokorne in the event such proceeds became distributable under Section 11.04.

On October 31, 2001, the property was sold for $74,500,000. At the time of sale, four notes encumbered the property including a $56,684,000 note and a $49,712,000 note (know as the "Z Note" and "ZZ Note," respectively). Those two notes were paid off out the $74.5 million purchase price for a reduced amount and the buyer took the property subject to the remaining encumbrances. As a result of

---

1. The property consisted of an office building in Los Angeles, California.

2. Real–Vest's interest in this property stems from its wholly owned subsidiary, Real–Vest California, Inc., which had a residual interest in the Beaudry I partnership.

the sale, Gary received a payment of $1,875,000 in consideration for his services. It is this payment that gives rise to the present lawsuit. Having set forth the relevant facts, we address first the plaintiff's motion to strike.

## Motion to Strike

■ The plaintiff seeks to have this Court strike several of the defendants' documents, or portions thereof, supporting their motion for summary judgment. The plaintiff claims these documents are violative of Fed.R.Civ.P. 56(e)'s requirement that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). "A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion." *Newport Elec., Inc. v. Newport Corp.*, 157 F.Supp.2d 202, 208 (D.Conn. 2001). A party can make a motion to strike affidavits if they are not made on the basis of personal knowledge. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988). A motion to strike can also be used to challenge documentary evidence that has not been properly authenticated. *E.g., Dedyo v. Baker Eng'g N.Y., Inc.*, No. 96 Civ 7152, 1998 WL 9376, at *4 (S.D.N.Y. Jan. 13, 1998).

First, the plaintiff challenges portions of Gary's March 22, 2002 affidavit, namely, paragraphs 3, 11, 15, 16, 24, 27, 28, as well as paragraphs 3 through 7 and 10 of his January 14, 2003 affidavit. He claims that they are self-serving, contain inadmissible "hearsay, are conclusory, argumentative and fail to cite supporting evidence." (Doc. 48, Pl.'s Mot. to Str. ¶ 1.) We disagree.

Gary's testimony contains averments based on his personal, intimate knowledge and understanding of the transaction be- tween himself and the plaintiff. He is also a party to this action and every single statement in his affidavits could be questioned on cross-examination at trial. *See Keene v. Hartford*, 208 F.Supp.2d 238, 243–44 (D.Conn.2002).

Second, the plaintiff argues that the expert testimony of Alan Gross would not be helpful to the trier of fact, and that it is not based on sufficient facts. Pursuant to Fed.R.Evid. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. An expert may offer opinion testimony as to an ultimate issue in the case," Fed.R.Evid. 704, unless stating a legal conclusion. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir.1992); *United States v. Scop*, 846 F.2d 135, 139 (2d Cir.1988); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994). Further, "[n]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ We decline to strike any of the challenged statements in the Gross affidavit. His occupation as a Certified Public Accountant who has, for the past fourteen years, been intimately involved with the Beaudry I Partnership, Gary, and Pokorne, provides him with a unique understanding of the complexity of the transactions involved in this case. For instance, he provided estimated tax consequences to the invested limited partner regarding the sale of the Beaudry I Partnership property, which, undoubtedly, involved specific knowledge of all the financial consequences of that transaction, including the classifica-

tion and distribution of funds. His expert testimony satisfies Fed.R.Evid. 702 in that it is based on sufficient facts and it would be quite informative to a jury.

Finally, the plaintiff claims that an independent report written by Gregory G. Gotthardt, a partner at Ernst & Young, on behalf of the defendants, must be stricken because it has not been authenticated and constitutes inadmissible hearsay. The defendants respond by arguing that the report is independently admissible as expert testimony pursuant to Fed. R. of Evid. 702. We agree.

First, the claim that the report is not authenticated is without merit. Gotthardt states on the first page of his report that it is his expert report, that he prepared it for purposes of this litigation and that it is the product of his examination of the "sale and distribution of sale proceeds" of the Beaudry I Partnership property. (Defs.' Ex. 9.) We find the report to be independently admissible as expert testimony under Fed. R.Evid. 702 because it satisfies that Rule's requirements.

Before reaching the merits of the parties' claims we must determine what state's law to apply to the claims presented.

### Choice of Law

■ "A federal court sitting in diversity ... must apply the choice of law rules of the forum state." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir.1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984). Connecticut's choice of law rules, absent a limited circumstances not relevant here, gives effect to the parties' choice of law when expressed in the con-

tract. *See Elgar v. Elgar*, 238 Conn. 839, 850, 679 A.2d 937 (1996) (listing circumstances in which a choice of law clause would not be operative).

Here, the plaintiff is suing pursuant to the Stock Agreement and Assignment. The Stock Agreement specifies that it "shall be governed and construed in accordance with the laws of the State of New York." (Def.s' Ex. 1.) The Assignment has no such provision. It was, however, executed as part of the Stock Agreement[3] and, therefore, we will construe in accordance with New York law. (*See* Pl.'s Memo. of Feb. 18, 2003, at 12.) Having determined that the substantive law of New York governs the contracts at issue here, we consider now the merits of the parties' claims.

### Summary Judgment Standard

The standard for granting a motion for summary judgment is well-established. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing that there is no genuine factual dispute rests with the moving party. *See Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**3.** The Assignment was executed on December 18, 1991; the Stock Agreement was executed on January 10, 1992.

Where, as here, both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993). Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981).

■ To the extent that we must construe contractual language, we note further that summary judgment is appropriate only when the terms of the contract are wholly unambiguous. *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Contractual language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) (internal citation and quotation marks omitted). Language does not become ambiguous solely because the parties offer conflicting interpretations during the course of litigation. *See Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120 (2d Cir.1985); *see also Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir. 1983).

■ If the contractual language is ambiguous and subject to varying reasonable interpretations, the issue of the parties' intent is a question of fact, thereby rendering summary judgment inappropriate. *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir.1990). In that event, the parties have a right to present extrinsic evidence to aid in the interpretation of the contract whose provisions are not wholly unambiguous. *Asheville Mica Co. v. Commodity Credit Corp.,* 335 F.2d 768, 770 (2d Cir.1964).

Thus, if the moving party cannot establish unambiguous contract language, "a material issue exists concerning the parties' intent," which is a question of fact left to the jury. *Wards Co.,* 761 F.2d at 120; *see also Royal Ins. Co. of Am. v. Zygo Corp.,* No. 3:01CV1317, 2003 WL 21960734, at *1–2 (D.Conn. Aug. 15, 2003).

## Discussion

The essential issue for this court is whether Gary's fee in relation to the sale of the Beaudry I property constituted proceeds that should have been distributed under Section 11.04 of the Partnership Agreement, thereby entitling Pokorne to a portion of those proceeds under section 6(b) of the Stock Agreement and the Assignment.

*Contractual Language*

Section 6 of the Stock Agreement provides in relevant part:

RV . . . agrees as follows: (b) In the event that at any time, or from time to time, RV (or any subsidiary or affiliate of RV, including Gary) should receive a *fee in lieu of payment* otherwise payable to R–V Realty of California, Inc. and/or Gary pursuant to Section 11.04(iv) of the [Partnership Agreement] . . . RV shall promptly pay to Pokorne an amount equal to 25% of the amount of such fee which is in excess of $250,000. RV shall deliver to Pokorne at the time of making such payment a report setting forth the amount of the fee and the calculation of the payment to Pokorne.

(App. to Defs.' Reply Mem. Tab 1.) (emphasis added).

The Assignment provides in relevant part:

[T]he parties hereto hereby agree as follows: 1. Assignor [R–V Realty of California, Inc.] does herewith sell, transfer and assign, and Assignee [Po-

korne] does hereby accept without warranty, an amount equal to forty percent (40%) of any proceeds (after the distribution of proceeds to Ronald J. Theissen) which may from time to time be distributed to Assignor pursuant to Section 11.04(iv) of [the Partnership Agreement] . . . among Assignor, Donald A. Gary, P.K. Investors Partnership–1985, KNAP Partners and R–VE Stamford Limited Partnership III . . . of Beaudry I Investors. 2. Assignee hereby acknowledges that (a) the interest of Assignor pursuant to said Section 11.04(iv) of [the] Partnership Agreement is contingent and speculative in that Assignor may never receive any proceeds pursuant to said Section 11.04(iv) of the Partnership Agreement and that, accordingly, Assignee's interest hereunder is also contingent and speculative and (b) Assignee has no further interest . . . in the Partnership other than as set forth in Paragraph 1 hereof above. 3. Assignor hereby agrees to receive in trust for Assignee any *proceeds properly payable* to Assignee pursuant to the provision of Paragraph 1 and promptly pay over to Assignee any such proceeds received. Assignor further agrees to properly account to Assignee, upon Assignee's reasonable request thereof, with respect to any proceeds which may be payable to Assignee pursuant to the provisions of Paragraph 1 hereof.

(*Id.* at Tab 2.)

Section 11.04 of the Partnership Agreement provides:

> The *Net proceeds* from capital transactions, including the sale and liquidation of the Partnership property and assets . . . shall be distributed and applied to the extent available in the following order: (i) to the payment of debts and liabilities of the Partnership, including debts, liabilities and obligations; (ii) to the setting up of any reserves which the Managing General Partner of the liquidator deems reasonably necessary for contingent or unforseen liabilities or obligations of the partnership; (iii) to the Partners, pro rata, in an amount equal to their Capital Contributions to the Partnership, less the total amount of all prior distributions to them pursuant to this Section; provided, however, that no amount shall be distributed to the Partners in excess of the positive balances in their respective Capital Accounts; and (iv) the balance, if any, distributed pari passu 33% to RVR; 12% to RVE; 2% to Gary; 50% PKI; and 3% to KNAP.

(Defs.' Mem.) (emphasis added).

Finally, we set forth Section 7.04 of the Partnership Agreement because the defendants claim that Gary's payment for services was authorized and distributed to him through that section. It provides in relevant part:

> The General Partners . . . shall have the right to contract and otherwise deal with the partnership for the sale of property, for services or for other purposes (all of which shall be reasonably necessary or appropriate for the accomplishment of the Partnership's purposes), and to receive reimbursement of actual out of pocket expenditures reasonably incurred in the performance of their duties hereunder; provided, however, that the terms and conditions of such contracts or dealings shall be no less favorable to the Partnership than could be obtained from unrelated third parties dealing at arms-length (sic) with the Partnership. Any contract or dealing referred to above shall be fully disclosed to all Partners.

(Pl.'s Opp'n, Ex. H at 23.)

*Fiduciary Duty*

The defendants have moved for summary judgment on the plaintiff's breach of

fiduciary duty claim arguing that under New York law they owed no fiduciary duty to Pokorne.

New York law states clearly that "a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Compania Sud–Americana de Vapores v. IBJ Schroder*, 785 F.Supp. 411, 426 (S.D.N.Y.1992) (internal citations and quotation marks omitted); *see also Oursler v. Women's Interart Ctr. Inc.*, 170 A.D.2d 407, 408, 566 N.Y.S.2d 295, 297 (1991); *Payrolls & Tabulating, Inc., v. Sperry Rand Corp.*, 22 A.D.2d 595, 598, 257 N.Y.S.2d 884, 887 (1965). "Indeed, New York Courts have rejected the proposition that a fiduciary relationship can arise between parties to a business transaction ... and have concluded that 'where parties deal at arm[']s length in a commercial transaction, no relationship of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.'" *Compania*, 785 F.Supp. at 426; *see In Re Mid–Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir.), *cert. denied, Mid–Island Hosp., Inc. v. Empire Blue Cross and Blue Shield*, 537 U.S. 882, 123 S.Ct. 104, 154 L.Ed.2d 140 (2002); *BBS Power Mod, Inc. v. Prestolite Elec., Inc.*, 71 F.Supp.2d 194, 203 (W.D.N.Y.1999). Such circumstances generally relate to the superior bargaining position of one party. *See BBS*, 71 F.Supp.2d at 203.

Here, the plaintiff asserts that his business relationship with the defendants, which spanned a decade, suffices to establish that the defendants owed him a fiduciary duty. The plaintiff claims further that the parties' status as the only stock holders in a close corporation, their execution of certain agreements and involvement in numerous investments, provide additional reasons for finding a fiduciary duty to have existed here. We are not persuaded.

The record reveals that the "extraordinary circumstances" necessary to impose fiduciary obligations upon the defendants are fatally lacking. To begin, there is no evidence whatsoever that the transaction was anything other than an arm's length business transaction. Pokorne and Gary were clearly businessmen of a sophisticated nature. They established as business partners layers of companies of various types and took part in numerous business transactions of high economic value. As mentioned above, Pokorne was the vice-president of Real–Vest and Gary was its president. They were also partners in several partnerships and have had significant exposure to various partnership agreement provisions governing the distribution of funds.

Significantly, Pokorne states in his Declaration of February 14, 2003, that Section 6(b) was included in the Stock Agreement "to protect [his] rights to payment from Beaudry I if Gary or RVR received fees in lieu of distribution under [Section] 11.04(iv)" of the Partnership Agreement. This indicates that the deal was a business transaction entered into by parties of similar bargaining power. Pokorne recognized he had an interest to be protected and he negotiated successfully to secure it. Moreover, he was represented by counsel in these negotiations. In other words, the transaction was the product of arm's length negotiations. The plaintiff's claim made at oral argument and in his motion papers that he was unable to protect his interest, based on the evidence, seems rather disingenuous.

Because no genuine issue of material fact exists as to the plaintiff's breach of fiduciary duty claim, we GRANT the defendants' motion for summary judgment in that regard.

## Breach of Contract

The defendants have moved also for summary judgment on the plaintiff's breach of contract claim. Fundamentally, their argument is this: Because the mortgage holders and primary investors lost millions of dollars and were not paid in full when the property was sold, there was no money for distribution under the clear and unambiguous language of Section 11.04(iv) of Partnership Agreement. Consequently, there were no proceeds "properly payable" under the Assignment, and no fee paid in lieu of distribution pursuant to Section 6(b) of the Stock Agreement. Moreover, the invested partners were free to make whatever deal they wanted with Gary to pay him any amount they saw fit for his services. As an additional argument, and the one we find convincing, the defendants assert that his receipt of a fee was authorized explicitly by Section 7.04 of the Partnership Agreement. Our inquiry, therefore, focuses on Section 7.04.

Section 7.04 allows general partners "to contract and otherwise deal with the partnership for ... services or for other purposes." We find this language to be definite and precise. It authorizes a general partner, like Gary, to contract with the partnership for services. As the defendants argue, because Gary was entitled to a fee for his services under Section 7.04, that amount was subtracted properly from the gross proceeds of the sale of the Beaudry I property and it did not constitute net proceeds. Under Section 11.04, Pokorne is entitled to the distribution of *net proceeds* only; the Assignment allows him to receive proceeds that are *properly payable* under Section 11.04(iv), as does Section 6(b). Because there were no net proceeds under Section 11.04(iv), no proceeds were properly payable under the Assignment or the Stock Agreement.

■ The plaintiff does little to challenge this interpretation. He provides only con-clusory statements devoid of any legal authority. For instance, he claims that Section 7.04 "does not authorize payment of the fee here because, as general partner, Gary was required to devote his time to management of the partnership's business. Special compensation is not warranted for performance of services that the general partner is already obligated to provide. And, in any event, Defendants' failure to disclose Gary's fee, disqualifies them from relying on that section here." (Pl.'s Mem. in Opp'n at 8–9.) Conclusory statements of this type will not suffice to invent a genuine issue of material fact where none exists. *See Conroy v. New York State Dept. of Corr. Services,* 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.") (citing *Cifarelli v. Vill. of Babylon,* 93 F.3d 47, 51 (2d Cir.1996)).

The plaintiff makes other claims under Section 7.04 that have no basis in the contract. For example, he claims that Gary has violated Section 7.04 because he did not provide proper notice to his fellow partners. The plaintiff argues, while general partners may contract with the partnership, certain conditions must be met first. For instance, such dealings have to be fully disclosed to all partners, the dealings must be necessary and appropriate and no less favorable to the partnership than could have been obtained from a third party. (*See* Pl.'s Mem. in Supp. of Summ. J. at 5.) Section 7.04 is quite clear in that such challenges concern partners to the partnership— not the plaintiff. Section 7.04 states precisely that "[a]ny contract of dealing referred to [in this Section] shall be fully disclosed to all *Partners.*" (emphasis added). The plaintiff is not a partner under the Partnership Agreement.

The plaintiff's interpretation of Section 7.04 is unreasonable and finds no support,

even when the record is viewed in a light most favorable to his position. The defendants, on the other hand, have satisfied their burden of demonstrating that no genuine issue of material fact exists regarding the interpretation of Section 7.04. It allows clearly for Gary to contract with the partnership and to receive payment for his services. As we have stated already, Section 11.04 allows for the distribution of "net proceeds" in order of priority. Reading Sections 7.04, 11.04, the Assignment and the Stock Agreement together, any fees taken under section 7.04 necessarily must be deducted from gross proceeds. *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir.2003) (In assessing ambiguity, we consider the entire contract to "safeguard against adopting an interpretation that would render any individual provision superfluous.") If Gary's authorized fee was not to be deducted from the gross proceeds of the sale, the language allowing a general partner to receive such a fee would be rendered meaningless. *Manley v. Ambase Corp.*, 337 F.3d 237, 250 (2d Cir.2003). In other words, if the fee for services was not deducted from gross proceeds, it would become part of the "net proceeds," which must be distributed amongst others according to the Section 11.04, thereby stripping a general partner of his contractual right to receive a fee for his services in dealing with the Partnership.

We find that the defendants have demonstrated that no genuine issue of material fact exists as to the plaintiff's breach of contract claim and GRANT their motion for summary judgment on that claim.

*Plaintiff's Motion for Summary Judgment*

The plaintiff moves for judgment as to the entirety of his complaint. He, too,

claims that no genuine issue of material fact exists in this case. As our discussion above reveals, the defendants have shown that no genuine issue of fact exists and that judgment should enter in their favor as a matter of law. Consequently, the plaintiff's motion is DENIED because he cannot show that he is entitled to judgment as a matter of law.

**Conclusion**

The plaintiff's motion to strike **[Doc. 48]** is **DENIED**. The defendants' motion for summary judgment is granted regarding the plaintiff's claims for breach of fiduciary duty and breach of contract. Additionally, we grant summary judgment in favor of the defendants as to the plaintiff's remaining claims of unjust enrichment, accounting, constructive trust, breach of good faith and fair dealing, and conversion because the first three of those claims are dependent upon the fiduciary duty claim and the last two claims are dependent upon the breach of contract claim. Therefore, the defendants' motion for summary judgment is **GRANTED [Doc. 31]** as to all of the plaintiff's claims asserted against them. The plaintiff's motion summary judgment is **DENIED [Doc. 42]**. The clerk is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**