Shatiek ALLAH, Plaintiff–Appellant,

v.

CITY OF NEW YORK DEPARTMENT OF PARKS & RECREATION, Defendant–Appellee.

No. 01–9114.

United States Court of Appeals, Second Circuit.

Sept. 25, 2002.

Alan E. Wolin, Wolin & Wolin, Jericho, NY, for Appellant.

John Hogrogian, Assistant Corporation Counsel of the City of New York, New York, NY, for Appellee.

Present: LEVAL, CALABRESI, and POOLER, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED.**

Plaintiff Shatiek Allah appeals from an order of the United States District Court for the Southern District of New York (Victor Marrero, *District Judge*) that dismissed, pursuant to Federal Rule of Civil Procedure 56, Allah's employment discrimination complaint against his former employer the New York City Department of Parks and Recreation ("Parks").

Allah, who is African American and adheres to the Five Percenter religion, worked for Parks from May 1985 until his termination on December 10, 1999.

On March 12, 1999, Allah filed a civil rights complaint against Parks in which he made claims of racial and religious discrimination pursuant to 42 U.S.C. § 1981 and the New York Human Rights law. The actions of which Allah complained began on October 30, 1996, when a representative of Parks threatened him with arrest while questioning him concerning the arrest of another Parks employee. Allah also complained of other incidents including (1) a 1997 disciplinary proceeding in which Allah was convicted of several charges including use of cocaine, excessive absences, and failure to promptly notify Parks of an arrest; and was disciplined by loss of pay and vacation days; (2) repeated instances in which Parks docked Allah's pay for absences; (3) a change in schedule that prevented Allah from taking care of personal business without taking a vacation or personal day; (4) denial of permits for activities Allah wished to conduct in the parks; (5) a change for the worse in Allah's 1996 performance evaluation after Allah signed it; and (6) Parks' failure to adequately investigate Allah's complaints.

On December 10, 1999, Parks fired Allah based on its findings that he struck and intimidated a supervisor, used obscene language with that supervisor, failed to obey the lawful order of another supervisor, engaged in disruptive conduct, was late on excessive occasions, and neglected assigned duties. Allah filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on May 4, 2000. He claimed that Parks discriminated against him based on race and religion and retaliated against him for protected activities including his filing of the federal court complaint and a myriad of internal complaints. In addition to alleging that his termination was discriminatory and retaliatory, Allah complained of all the conduct set out in his federal court complaint. He also added new incidents of allegedly discriminatory and retaliatory conduct: (1) in March 1999, he was counseled in a supervisory conference despite the fact that the supervisor who counseled him had not observed the conduct at issue and (2) Parks twice assigned him to the Elijah Stroud playground despite supervisors' knowledge that the playground would be dangerous for Allah and, on one occasion, that it lacked heat and hot water.

On August 28, 2000, EEOC dismissed Allah's complaint and notified him of his right to sue. Allah then filed an amended complaint adding his new factual allegations and making a Title VII claim.

The district court granted Parks' motion for summary judgment. Judge Marrero first found that all of Allah's Title VII claims except those occurring after June 24, 1999, were barred by the statute of limitations for filing a complaint with the EEOC. *See Allah v. City of New York Dep't of Parks & Recreation,* 162 F.Supp.2d 270, 273 (S.D.N.Y.2001). As to any remaining discrimination claims, the court found that Allah failed to establish both that he had suffered an adverse employment action and that the employment action in question occurred under circumstances giving rise to an inference of discrimination. *Id.* The court also dismissed Allah's Section 1981 discrimination claims because of Allah's failure to offer proof from which a reasonable jury could find an adverse employment action or could infer discrimination. *Id.* at 274. Finally, Judge Marrero dismissed the retaliation claim, finding that Allah did not offer sufficient evidence of a causal connection between his protected activity and subsequent employment actions. *Id.* at 274.

Allah appeals, arguing principally that the court erred by (1) failing to give him the benefit of the continuing violation or hostile environment exceptions to the 300

day limitation period for filing discrimination claims with the EEOC, (2) finding no adverse employment action or circumstances permitting an inference of discrimination, and (3) rejecting his retaliation claim. Parks both defends the district court's reasoning and contends that because Allah filed no complaint with the New York State Division of Human Rights ("DHR"), he had only 180 days to file his complaint with the EEOC.

For our purposes, we assume that Allah had a full 300 days in which to file his EEOC complaint. Therefore, unless Allah can establish a continuing violation or hostile environment exception to the 300-day statute of limitations, he has no Title VII claim for conduct occurring before late June 1999, making only his termination claim and his claim that Parks discriminated against him by transferring him to a dangerous playground in July 1999 actionable under Title VII. He can establish neither.

■ Assuming that this circuit's test for a continuing violation exception remains valid,[1] Allah failed to make the required showing of either "[d]iscrete incidents of discrimination [that] are specifically related and are allowed to continue unremedied for so long as to amount to a discriminatory policy or practice" or of an actual discriminatory practice such as the use of a discriminatory employment test. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997) (internal quotation marks omitted). Because Allah alleges many different types of actions that were committed by different supervisors and that bear no clear relationship to each other or to

the only acts within the 300-day period, he does not allege a continuing violation.

■ Nor do Allah's allegations describe a hostile environment. Allah complains both of acts that had a tangible effect on his employment, e.g. transfers to unattractive environments, termination, loss of pay, loss of vacation, changes in an evaluation, and of acts that on their face have nothing to do with his employment, e.g. denials of permits to hold outside events. An actionable hostile environment claim, on the other hand, must target conduct like racial taunting, stereotyping, and intimidation that does not impact an employee's pay or benefits but nevertheless is so persistent and severe that it alters "the conditions of the victim's employment and create[s] an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Allah does not describe a hostile environment. Consequently only his termination and July transfer claims are actionable under Title VII.

However, Allah's Section 1981 and Human Rights Law claims both have three-year statutes of limitations. *See Mian v. Donaldson, Lufkin & Jenrette Secs.*, 7 F.3d 1085, 1087 (2d Cir.1993) (Section 1981); *Quinn v. Green Tree Credit*, 159 F.3d 759, 765 (2d Cir. 1998) (Human Rights Law). Therefore, we must address the merits of all of Allah's discrimination claims.

This circuit analyzes Section 1981 and Human Rights Law discrimination claims using the same analytic framework that it uses for Title VII discrimination claims. *See Whidbee v. Garzarelli Food Specialties*, 223 F.3d 62, 69 (2d Cir.2000) (Section

---

1. A recent Supreme Court's decision casts some doubt on the continued existence of a continuing violation exception if the continuing violation does not create a hostile environment. *See National R.R. Passenger Corp. v.*

*Morgan*, — U.S. —, —, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even where they are related to acts alleged in timely filed charges").

1981); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 4 (2d Cir.1995). Allah must initially offer proof that, among other things, the actions taken against him "occurred in circumstances giving rise to an inference of discrimination." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). Parks must then articulate non-discriminatory reasons for the actions it has taken. If Parks does so, plaintiff bears the "ultimate burden" of proving "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Plaintiff's prima facie case plus a showing of pretext may defeat a properly supported summary judgment but will not always do so. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir.2001). Instead, the court must determine whether plaintiff's proof could convince a reasonable fact-finder that discrimination motivated his employer. *Id.* In making this determination, the court should consider the strength of the prima facie case, the proof that defendants' explanation was false, and any other probative proof in the record.

■ For purposes of this discussion, we assume that plaintiff established a prima facie case of race discrimination, albeit a very weak one.[2] The only evidence plaintiff offered relevant to discriminatory intent was (1) there were no African American supervisors at Parks; (2) none of the individuals who acted against Allah were African American or Five Percenters; and (3) two other individuals whose urine tests showed narcotics use and who were neither African American nor Five Percenters were given temporary promotions for summer supervisory positions but Allah, whose urine test was positive for cocaine, was not. Allah offered no information concerning the relative qualifications of these employees, their seniority, the type of drug they took, or whether they, like Allah, were convicted of offenses in addition to the narcotics charge. In fact, the two, unlike Allah, stipulated to their guilt, an opportunity Allah also was offered but declined. Parks, on the other hand, offered significant evidence and not just plausible articulations for most of the actions it took against Allah. For instance, to justify Allah's termination, Parks offered testimony from three supervisors describing Allah's verbally and physically abusive conduct toward one of them. Allah offers almost no evidence of pretext. For instance, he does not dispute that he used obscene language with his supervisor, that the urine test underlying the 1997 disciplinary action was positive, or that he did not obey another supervisor's order to clean the perimeter of a park. We conclude that Allah has offered insufficient evidence to allow a reasonable fact finder to conclude that Parks' proferred reasons were pretextual and its real motive discrimination. Thus, we affirm the district court's dismissal of Allah's discrimination claims.

■ Plaintiff claimed retaliation only pursuant to Title VII. Therefore, we con-

---

**2.** We agree with the district court that certain of the acts of which Allah complained, e.g. denial of permits to use a park for outside activities, were not adverse employment actions. However, certain acts, e.g. Allah's termination, his loss of vacation and pay, and the 1997 discipline, clearly were adverse employment actions. We also assume that Allah's July 1999 transfer to a dangerous and uncomfortable playground was an adverse employment action.

Allah did not offer even a prima facie case of employment discrimination based on religion because he described no circumstances from which a reasonable fact finder could infer religious discrimination.

**50**

sider only his termination and transfer in determining whether plaintiff provided sufficient proof from which a reasonable jury could determine Parks retaliated against him. Allah can make out a prima facie case of retaliation under Title VII by showing "(1) that [he] was engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that [he] suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79 (2d Cir.2001) (internal quotation marks omitted). Assuming that Allah established that some of his many complaints were protected activity, there is insufficient evidence for a reasonable trier of fact to conclude that retaliation for protected activity motivated Allah's transfer or his termination. The record depicts an employee who was perceived by Parks as having (1) failed a urinalysis, (2) refused to stipulate to the results of that urinalysis, (3) refused to cooperate in an investigation of a fellow employee, (4) had excessive absences, (5) disrupted a meeting, (6) disobeyed a supervisor's direct order, and (7) engaged in a physical and verbal altercation with another supervisor. Therefore, the district court did not err by dismissing Allah's retaliation claims.