Harold Haley BURBANK II, Plaintiff,

v.

OFFICE OF THE ATTORNEY GEN-ERAL OF THE STATE OF CON-NECTICUT and Richard Blumenthal, Defendants

No. CIV.A.3:99 CV 1608 C.

United States District Court, D. Connecticut.

Jan. 21, 2003.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

US Court of Appeals, Office of the Clerk, New York City, Notice Only.

Thomas P. Clifford, III, Attorney General's Office Labor Relationa, Margaret Quilter Chapple, Eleanor M. Mullen, Attorney General's Office Employment Rights, Hartford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

### I. *Introduction*

The plaintiff, Harold Haley Burbank II, brought this action alleging that the defendants, the Office of the Attorney General of the State of Connecticut ("Office of the Attorney General") and Attorney General Richard Blumenthal ("Blumenthal"), violated certain of his rights under the United States Constitution and Connecticut state law when they failed to hire him as an Assistant Attorney General.

On September 21, 2000, this Court granted in part and denied in part the defendants' motion to dismiss. Pursuant to *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 82–83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) and the Eleventh Amendment, the Court dismissed the plaintiff's Age Discrimination in Employment Act ("ADEA") claim against the Office of the Attorney General. Also pursuant to the Eleventh Amendment, the Court dismissed the plaintiff's claims against the Office of the Attorney General for race discrimination under § 1981[1] and for race and age discrimination under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–60, *et seq.*

The Court declined to dismiss Count One against the Office of the Attorney General, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended by the Civil Rights Act of 1991 ("Title VII");[2] Count Three against Blumenthal, alleging race discrimination in violation of 42 U.S.C. § 1981;[3] Counts Four and Five

---

1. Though not discussed in the Court's ruling on the motion to dismiss, two alternative grounds exist for the dismissal of Burbank's § 1981 race discrimination claim against the Office of the Attorney General. Those grounds are addressed in Section III.C. and apply both to Burbank's § 1981 claim against Blumenthal and his § 1981 claim against the Office of the Attorney General.

2. Though Count One alleges both age and race discrimination, it is clear that Title VII does not provide a cause of action for age discrimination. *See* 42 U.S.C. § 2000e–2.

3. The Court also declined to dismiss the plaintiff's § 1981 claim against Blumenthal in his official capacity for prospective injunctive relief, such as reinstatement, to the extent the plaintiff was seeking such relief. It remains unclear whether the plaintiff brought his § 1981 claim against Blumenthal in his official or individual capacity or both. Of course, to the extent his § 1981 against Blumenthal in his official capacity seeks monetary damages, that claim for damages is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Moreover, for the reasons stated in Section III.C., Burbank's § 1981 claim against Blumenthal is prohibited by *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), whether that claim is brought in Blumenthal's

against Blumenthal, alleging race and age discrimination in violation of CFEPA; and Count Six against Blumenthal, alleging race and age [4] discrimination in violation of 42 U.S.C. § 1983.

The defendants subsequently filed a motion for summary judgment [Doc. # 34] as to the plaintiff's remaining claims. For the following reasons, the motion for summary judgment [Doc. # 34] is GRANTED.

## II. *Background* [5]

Plaintiff Harold Haley Burbank II ("Burbank"), a Caucasian male born on January 23, 1957, was hired by the Office of the Attorney General as an Assistant Attorney General 1 [6] in September 1987. After holding that position for one year, Burbank was terminated because of his failure to satisfy a requirement of that position, namely, he failed to pass the Connecticut bar exam within one year of his appointment. In 1992, still not having passed the Connecticut bar exam, Burbank was hired by the Office of the Attorney General as a Paralegal Specialist I. Burbank was initially assigned to its Workers' Compensation Department, but was later transferred to its Child Support Department.

In 1994, Burbank passed the Connecticut bar exam after six attempts. At that time, Burbank applied to be rehired as an Assistant Attorney General, but was not hired. In 1998, Burbank was interviewed for an Assistant Attorney General 1 and/or 2 position in the Child Protection Department, but was not hired. Since 1994, Burbank has been employed as a paralegal in the Child Support Department.

On October 6, 1998, the plaintiff filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").[7] On November 3, 1998, Burbank filed a complaint with the Equal Employment Opportunities Commission ("EEOC"). On August 19, 1999, Burbank filed the instant complaint.

## III. *Discussion*

### A. *Title VII Race Discrimination Claim Against the Office of the Attorney General (Count One)*

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff alleging disparate

---

official or individual capacity. *See supra* note 1 and *infra* Section III.C.

4. Though the plaintiff's ADEA claim against the Office of the Attorney General is foreclosed by *Kimel* and the Eleventh Amendment, it appears that he may pursue his age discrimination claim in Count Six against Blumenthal in his individual capacity pursuant to § 1983 and equal protection under the Fourteenth Amendment. *See Mustafa v. State of Nebraska Dep't of Corr'l Serv.,* 196 F.Supp.2d 945, 955–57 n. 11 (D.Neb.2002). The plaintiff's complaint indicates that this count is directed at Blumenthal in his individual capacity only.

5. The following facts are taken from the parties' Local Rule 9(c) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

6. The record refers to two types of Assistant Attorney General positions-Assistant Attorney General 1 and Assistant Attorney General 2. However, the record does not make clear the differences, if any, between the two positions.

7. Although the defendants argue that the Court lacks jurisdiction to hear the plaintiff's CFEPA claims because he has not obtained a decision, or appealed a decision, by the CHRO on such claims, *see* Defs.' Mem. Supp. Mtn. Summ. J. at 36, it appears from the record that the plaintiff did file a complaint with the CHRO on October 6, 1998 and obtained a release of jurisdiction from the CHRO on June 10, 1999. *See* Pl.'s Submission of Ev. in Opp'n to Mtn. Summ. J. Ex. 1.

treatment based on race in violation of Title VII must first establish a prima facie case of discrimination. To establish a prima facie case of race discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for continued employment, (3) an adverse employment action, and (4) circumstances that give rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The burden on the plaintiff of presenting a prima facie case under *McDonnell Douglas* is "minimal." *James v. New York Racing Ass'n,* 233 F.3d 149, 153 (2d Cir.2000) (internal quotation marks omitted).

Once a prima facie case is established, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the plaintiff's termination. *See id.* If the employer does so, the plaintiff bears the "ultimate burden" of proving " 'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)); *see also Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff's prima facie case plus a showing of pretext may defeat a properly supported summary judgment but will not always do so. *See Lizardo v. Denny's, Inc.,* 270 F.3d 94, 103 (2d Cir.2001) (citing *Reeves,* 530 U.S. at 146–48, 120 S.Ct. 2097). Instead, the court must determine whether the plaintiff's proof could convince a reasonable factfinder that discrimination motivated his employer. *See id.* In making this determination, the court should consider the strength of the prima facie case, the proof that defendants' explanation was false, and any other probative proof in the record. *See Allah v. City of New York Dep't of Parks & Recreation,* 47 Fed. Appx. 45, 49, 2002 WL 31119698 at *3 (2d Cir.2002).

The Office of the Attorney General contends that it is entitled to summary judgment as to Burbank's race discrimination claim because Burbank has failed to present sufficient evidence of one of the prongs of his prima facie case, namely, that his failure to be hired as an Assistant Attorney General occurred under circumstances giving rise to an inference of race discrimination. In the alternative, the Office of the Attorney General argues that it has shown a legitimate, non-discriminatory reason for its failure to hire Burbank as an Assistant Attorney General and that Burbank has not demonstrated that its reason was a pretext for race discrimination.

The Court concludes that, even assuming without deciding that Burbank has satisfied the minimal burden of proof required to support a prima facie case, the Office of the Attorney General has demonstrated a legitimate, non-discriminatory reason for its failure to hire Burbank and Burbank has not demonstrated that its reason was a pretext for discrimination.[8]

---

**8.** In *McDonald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273, 279, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court held that Title VII "proscribe[s] racial discrimination ... against whites on the same terms as non-whites." However, there is currently a circuit split on the issue of how the first *McDonnell Douglas* requirement, that the plaintiff "belongs to a racial minority," applies when a white person is claiming discrimination. *Compare Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir.1997) (holding that a plaintiff in a reverse discrimination case does not present a prima facie of discrimination unless he shows that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority"); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985) (same); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 457 (7th Cir.1999) (same); *Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir. 1992) (same); *Russell v. Principi,* 257 F.3d

That is, in response to the defendants' reasons for not hiring him, Burbank has not proffered any evidence of discriminatory intent, nor has Burbank introduced evidence sufficient to raise an issue of fact as to whether the defendants' explanations for rejecting him are false. *See Reeves*, 530 U.S. at 142–44, 120 S.Ct. 2097.

In support of his discrimination claim, Burbank has presented evidence that two individuals-both under age 40, one Caucasian and one of Asian descent, and both possessing qualifications similar to Burbank-were hired for the position of Assistant Attorney General in the Child Support Department in his stead. Burbank has also produced evidence demonstrating favorable ratings for his work as a paralegal in the Child Support Department and letters of recommendation for an Assistant Attorney General position. *See* Pl.'s Exs. 3, 10–14.

■ The Office of the Attorney General concedes that Burbank possesses the educational and professional background to satisfy the minimum qualifying criteria set forth in the job specifications for Assistant Attorney General 1 and/or 2, but maintains that he was not selected for such appointment because of his five prior failures of the Connecticut bar exam, his work performance as a paralegal in the Workers' Compensation Department, and his failure to be recommended to the position by either the head of the Child Support Department, Donald Longley, or the head of the Child Protection Department, Susan Pearlman.[9]

Burbank does not deny that he failed the Connecticut bar exam five times prior to passing. Nor does he contest with any evidence that Longley, his supervisor in the Child Support Department, and the head of the Child Protection Department, Pearlman, refused to recommend him to the position of Assistant Attorney General 1 and/or 2 for reasons other than his race. Further, Burbank has not produced any evidence in contravention of his Workers' Compensation Department supervisor's rating of his performance in that department as "less than good" and concurrent refusal to give Burbank permanent status as a paralegal in that department for the reason that Burbank was "unable to satisfactorily exercise sound judgment and discretion over workers' compensation files." McCullough Aff. at ¶¶ 7, 8. Accordingly, Burbank has failed to present evidence that the defendants' reasons for failing to

815, 818 (D.C.Cir.2001) (same), *with Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir.2000) (holding that a plaintiff in a reverse discrimination case need show only that he is a member of "a protected group" and whites are a protected group under Title VII); *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1103–04 (11th Cir.2001) (same). The Second Circuit has declined to explicitly address the issue. *See, e.g., Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997) (finding white, Eastern European male to have made prima facie case of national origin discrimination under Title VII, but not discussing whether heightened standard applies). This Court need not resolve this dispute, however, because, as noted above and discussed *infra*, even assuming that Burbank was able to satisfy the four requirements of *McDonnell Douglas* and establish a prima facie case, he has failed to present sufficient evidence to show that the defendants' articulated reason for his rejection was pretextual.

9. Longley stated in an affidavit that he refused to recommend Burbank for an Assistant Attorney General position because of Burbank's prior work performance as a paralegal in the Workers' Compensation Department, the excellent quality of the candidate pool, and the need for Assistant Attorneys General to be prepared to work within any of the sixteen departments of the office based on agency needs. Longley Aff. at ¶ 12. Pearlman stated that she did not recommend Burbank for a position in her department because of a number of reasons, including the "mixed reviews" he received from several attorneys. Pearlman Aff. Ex. 1.

hire him as an Assistant Attorney General 1 and/or 2 are false or a pretext for race discrimination.

Further, the Office of the Attorney General has presented uncontradicted evidence that, between May 1994 and April 2001, the years in which Burbank applied for an Assistant Attorney General position, sixty-four of the eighty-six Assistant Attorneys General hired were white.[10] During the one year period prior to Burbank's filing of his EEOC complaint in November 1998, nineteen of the twenty-eight individuals hired for the position of Assistant Attorney General 1 and/or 2 were white.[11] Also at that time, ninety-three of the total one hundred and twenty-seven Assistant Attorneys General 1 and/or 2 employed by the Office of the Attorney General were white. Though Burbank disputes these facts in his Local Rule 9(c)(2) statement, he has not produced any evidence in contravention of them.

Burbank's claim of race discrimination is further belied by the fact that the Office of the Assistant Attorney General hired him as an Assistant Attorney General in 1987. *See, e.g., Rand v. CF Industries,* 42 F.3d 1139, 1147 (7th Cir.1994) (finding no reasonable inference of discrimination where discharged attorney was member of protected class when hired).

As an additional matter, the Second Circuit has made it clear that the intent to remedy past discrimination against minorities does not amount to a forbidden racial classification or an intent to discriminate against non-minority candidates unless it involves quotas, set-asides, preferential grading, or similar means that prevent non-minorities from competing for positions. *See Hayden v. County of Nassau,* 180 F.3d 42, 49, 51 (2d Cir.1999). Here, though Burbank has produced evidence that the Office of the Attorney General has identified itself as employing an "affirmative action program" that "welcome[s] application from minority candidates," Pl.'s Exs. 7, 17, he has not pointed to any evidence that the Office of the Attorney General employed quotas, set-asides, or similar means in hiring or promotions. Nor has Burbank made a showing that the hiring process was set up to prevent non-minorities from being promoted. *Cf. Stern v. Trustees of Columbia Univ. of N.Y.,* 131 F.3d 305, 312–13 (2d Cir.1997). In fact, as noted above, during the period in which Burbank unsuccessfully applied to be an Assistant Attorney General 1 and/or 2, the Office of the Attorney General hired sixty-four white persons, out of a total of eighty-six Assistant Attorney General 1 and/or 2 positions available.

For all the foregoing reasons, the Court concludes that Burbank has not demonstrated that the Office of the Attorney General's reason for its failure to hire him was a pretext for race discrimination. Accordingly, summary judgment is granted as to Count One, Burbank's Title VII claims against the Office of the Attorney General.

B. *Section 1983 Age and Race Discrimination Claims Against Blumenthal (Count Six)*

As under Title VII, when challenging discrimination under § 1983, the plaintiff has the burden of proving a prima facie case of discrimination. *See Sorlucco v. New York City Police Dept.,* 888 F.2d 4, 7

---

10. Though relevant only to Burbank's § 1983 age discrimination against Blumenthal, the Court also notes that the uncontradicted evidence indicates that twelve of those eighty-six hired were over age forty.

11. Again relevant only to Burbank's § 1983 age discrimination against Blumenthal, the uncontradicted evidence indicates that four of those hired during this one-year period were age forty or older.

(2d Cir.1989) ("The Supreme Court has outlined a three-step analysis of factual issues in Title VII claims.... By analogy, the same analysis applies to claims under section 1983."). As noted above, to establish a prima facie case, the plaintiff must show (1) that he belongs to a protected class, (2) that he was performing his duties satisfactorily, (3) that he was discharged, and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Also as noted above, once a prima facie case is established, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the plaintiff's termination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Finally, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was a pretext for discrimination. Again, the plaintiff may do this by showing that "the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

Burbank has not produced any evidence of Blumenthal's race discrimination independent of his evidence as to the Office of the Attorney General. Accordingly, for the reasons noted above, and assuming all of Burbank's evidence against the Office of the Attorney General is relevant as to Blumenthal, the Court concludes that Burbank has failed to present sufficient evidence of race discrimination under § 1983 against Blumenthal. Thus, Blumenthal is entitled to summary judgment on this claim.

As to Burbank's § 1983 age discrimination claim against Blumenthal, the Court concludes that Blumenthal is also entitled to summary judgment. Even assuming without deciding that Burbank has satisfied the minimal burden of proof required to support a prima facie case of age discrimination, Blumenthal has demonstrated a legitimate, non-discriminatory reason for his failure to hire Burbank and Burbank has not demonstrated that this reason was a pretext for discrimination. That is, in response to Blumenthal's legitimate, non-discriminatory reasons for his failure to hire Burbank (e.g., previous failures of the bar exam, previous work history, lack of recommendations), Burbank has not proffered any evidence of discriminatory intent on the basis of age, nor has he introduced evidence sufficient to raise an issue of fact as to whether Blumenthal's explanations for rejecting him are false. *See Reeves*, 530 U.S. at 142–44, 120 S.Ct. 2097. Accordingly, summary judgment is granted as to Burbank's § 1983 age discrimination claim against Blumenthal, and as to Count Six in its entirety.[12]

### C. *Section 1981 Claim Against Blumenthal (Count Three)*

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

In *Jett v. Dallas Independent School District*, the Supreme Court held that "the

---

**12.** Thus, the Court need not reach the defendants' arguments that Blumenthal lacked "personal involvement" in the challenged actions as required by § 1983 or that he is entitled to qualified immunity.

express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *see Anderson v. Conboy*, 156 F.3d 167, 176 n. 17 (2d Cir.1998) (citing *Jett*, 491 U.S. at 733, 109 S.Ct. 2702). Some doubt had been cast on *Jett's* viability by the addition in 1991 of subsection (c) to § 1981, which states that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). However, most courts have held that " '[b]ecause Congress neither expressed its intent to overrule *Jett*, nor explicitly created a remedy against state actors in addition to § 1983, we are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett*.' " *Felton v. Polles*, 315 F.3d 470, 480–81 (5th Cir. 2002) (quoting *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 464 (5th Cir.), *cert. denied*, 534 U.S. 948, 122 S.Ct. 341, 151 L.Ed.2d 258, and *cert. denied*, 534 U.S. 949, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001)); *see also Anderson*, 156 F.3d at 178 n. 19 (noting circuit split on issue); *Burns v. Board of Commissioners of Cty. of Jackson*, 197 F.Supp.2d 1278, 1296 (D.Kan. 2002) (collecting circuit court cases). This court agrees and concludes that *Jett* applies to Burbank's § 1981 claim against Blumenthal.

▮ Furthermore, as stated by the Fifth Circuit in *Felton*, Burbank's § 1981 claim may not lie against Blumenthal whether that claim is brought in his official or individual capacity:

> *Jett* repeatedly phrases its holding with respect to "state actors"—not simply governmental entities. *See, e.g.,* 491

U.S. at 731, 109 S.Ct. 2702, 105 L.Ed.2d 598 ("We think the history of the 1866 Act [ (precursor to § 1981) ] and the 1871 Act [ (precursor to § 1983) ] . . . indicates that Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." (emphasis added)); *id.* at 733, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 ("Section 1983 provides an explicit remedy in damages which, with its limitations on municipal liability, Congress thought suitable to carry . . . into effect the rights guaranteed by § 1981 as against state actors." (internal quotation marks omitted; ellipsis in original; emphasis added)); *id.* at 734, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 ("The historical evidence surrounding the revision of 1874 [ (amending what became § 1983) ] further indicates that Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983." (emphasis added)); *but see id.* at 733, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (discussing Court's "conclusion that the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units" (emphasis added)) . . . . Accordingly, it appears § 1983 constitutes Carter's exclusive remedy for the claimed § 1981 violation by Thomas. *See, e.g., Ebrahimi v. City of Huntsville Bd. of Educ.*, 905 F.Supp. 993, 996 (N.D.Ala.1995) ("*Jett* is clear that a claim for damages against a state actor for violation of rights contained in § 1981 must be redressed pursuant to the explicit remedial provisions of § 1983. The Supreme Court did not make a distinction between state entities

and individuals acting pursuant to color of state law. Therefore, when a state employee seeks to hold an individual fellow state employee liable in damages for violation of § 1981 rights, such claim must also be pursued under the remedial provisions of § 1983." (emphasis in original)).

*Felton,* at 481–82. *Felton* also indicates one of the reasons why Burbank's § 1981 claim in this situation must be asserted through § 1983: "Although respondeat superior liability may be available through § 1981, it is not available through § 1983." *Id.* at 482–83 (internal citations omitted). Accordingly, the Court concludes that § 1983 constitutes Burbank's exclusive remedy for the claimed § 1981 violation by Blumenthal and Burbank's § 1981 claim against Blumenthal in either his official or individual capacity must be dismissed.

■ An alternative ground exists for the dismissal of Burbank's § 1981 claim. A non-minority plaintiff may bring a § 1981 action only under certain circumstances. *See Albert v. Carovano,* 851 F.2d 561, 572–73 (2d Cir.1988); *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (non-minority plaintiffs may sue someone who has retaliated against them because they did not engage in purposeful racial discrimination); *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 312 (2d Cir.) (white plaintiff stated claim under § 1981 where he alleged that he was forced into retirement because he had sold his house to black person), *modified on other grounds,* 520 F.2d 409 (1975). The threshold showing is that a non-minority plaintiff was "punished for trying to vindicate the rights of minorities protected by [the statute]." *Sullivan,* 396 U.S. at 237, 90 S.Ct. 400. Accordingly, a non-minority plaintiff may bring a § 1981 claim if the discrimination against him was motivated by animosity towards the race of a third party who is a member of a racial minority group. *See*

*Carovano,* 851 F.2d at 572 ("The Section 1981 rights being vindicated by white plaintiffs must be identified with some particularity in order to limit actions under that statute to its purpose. Otherwise, non-minority plaintiffs could bring actions where Section 1981 rights are not implicated.").

Here, Burbank does not make any claim, nor offer any evidence, that the defendants' actions against him were motivated by any discriminatory animus towards the members of any racially protected class. Accordingly, for this alternative reason, Burbank's § 1981 claim against Blumenthal fails.

For the foregoing reasons, summary judgment is granted as to Count Three, Burbank's § 1981 claim against Blumenthal.

### D. *CFEPA Claims (Counts Four and Five)*

Connecticut courts look to federal discrimination law for guidance in determining liability under CFEPA. *See Levy v. Commission on Human Rights & Opportunities,* 236 Conn. 96, 671 A.2d 349, 355 (1996); *State v. Commission on Human Rights & Opportunities,* 211 Conn. 464, 559 A.2d 1120 (1989). Thus, the standards set forth in *McDonnell Douglas* apply equally to Burbank's CFEPA claims. *See Levy,* 671 A.2d at 357. Accordingly, for the reasons noted above, the Court must grant summary judgment as to Burbank's CFEPA claims against Blumenthal.

### IV. Conclusion

For the preceding reasons, the defendants' motion for summary judgment [Document # 34] is GRANTED. The Clerk is directed to close the case.