Steven A. **ROBERTSON**, Keith Prioleau, Kevin W. Sanders, Melva C. Johnson, Beverly B. Robinson, Sylvia Howard, and Harry Leaphart, III, Individually and as Class Representatives, Plaintiffs,

v.

**SIKORSKY AIRCRAFT CORPORATION,** **Defendant.**

No. 3:97 CV 1216(GLG).

United States District Court, D. Connecticut.

April 9, 2003.

**34**

J. Daniel Sagarin, David A. Slossberg, Hurwitz & Sagarin, Milford, CT, Steven B. Singer, Daniel L. Berger, Nancy Lipin, Bernstein, Litowitz, Berger & Grossman, New York City, Joseph M. Sellers, Christine E. Webber, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Pamela Coukos, Mehri & Skalet, Washington, DC, Elias A. Alexiades, New Haven, CT, for Steven A. Robertson, Kevin W. Sanders, Melva C. Johnson, Beverly B. Robinson, Sylvia Howard, Harry Leaphart, III.

John R. Williams, Williams & Pattis, New Haven, CT, J. Daniel Sagarin, David A. Slossberg, Hurwitz & Sagarin, Milford, CT, Daniel L. Berger, Nancy Lipin, Bernstein, Litowitz, Berger & Grossman, New York City, Joseph M. Sellers, Christine E. Webber, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Pamela Coukos, Mehri & Skalet, Washington, DC, Elias A. Alexiades, New Haven, CT, for Keith Prioleau.

Charles L. Howard, Shipman & Goodwin, Hartford, CT, Kenneth William Gage, Natasha Marie Lipcan, Melissa L. Bellavia, Day, Berry & Howard, Stamford, CT, Felix J. Springer, Day, Berry & Howard, Hartford, CT, for Sikorsky Aircraft Corp.

## *OPINION*

GOETTEL, District Judge.

This case was originally filed in June, 1997 by seven individuals on behalf of themselves and 174 other salaried, African–American employees of defendant Sikorsky Aircraft Corporation ("Sikorsky"), alleging racial discrimination in compensation and promotions, and challenging certain employment programs utilized by Sikorsky. Plaintiffs sought monetary damages and injunctive relief pursuant to Section 1981 of the Civil Rights Act of 1871, as amended in 1991, 42 U.S.C. § 1981 ("Section 1981"), and Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

This Court denied plaintiffs' request for class certification, and subsequently all named plaintiffs except Keith Prioleau dismissed their claims with prejudice after reaching a settlement with Sikorsky. Thus, the only claims remaining are the individual claims of Prioleau for racial dis-

crimination in hiring and compensation and racially hostile work environment.

Sikorsky now moves for summary judgment [Doc. # 122] pursuant to Rule 56, Fed.R.Civ.P., on the ground that there is no genuine issue of any material fact and that Sikorsky is entitled to judgment in its favor as a matter of law on all claims asserted by Prioleau. For the reasons set forth below, Sikorsky's motion will be granted in part and denied in part.

### Summary Judgment Standard

The standard for reviewing motions for summary judgment is well established in the Second Circuit. In deciding the motion, this Court must first resolve all ambiguities and draw all reasonable inferences in favor of plaintiff as the non-moving party, and must then determine whether a rational jury could find for the plaintiff. *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223–24 (2d Cir.1994). Summary judgment should be granted only when the Court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, when a motion is made and supported as provided in Rule 56, Fed. R.Civ.P., the non-moving party may not rest upon mere allegations or denials of the moving party's pleadings, but instead must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. In other words, the non-moving party must offer such proof as would allow a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). This Court's "function at this stage is to identify issues to be tried, not decide them." *Graham,* 230 F.3d at 38.

In the context of employment discrimination cases where intent and state of mind are at issue, the Second Circuit has cautioned that summary judgment should be sparingly granted because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination. *Id.* (citing *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir.1989)); *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Gallo,* 22 F.3d at 1224. Additionally, in a case such as this, where a plaintiff bases his allegations of disparate treatment on a comparison of similarly situated individuals, the Second Circuit has held that the issue of whether two employees are similarly situated ordinarily presents a question of fact for the jury. *Graham,* 230 F.3d at 38–39; *see also Taylor v. Brentwood Union Free School Dist.,* 143 F.3d 679, 684 (2d Cir.1998), *cert. denied,* 525 U.S. 1139, 119 S.Ct. 1027, 143 L.Ed.2d 37 (1999); *Hargett v. National Westminster Bank, USA,* 78 F.3d 836, 839–40 (2d Cir.), *cert. denied,* 519 U.S. 824, 117 S.Ct. 84, 136 L.Ed.2d 41 (1996). With these considerations in mind, we turn to the individual claims of plaintiff Prioleau.

### Plaintiff Prioleau's Claims

According to the amended complaint, Prioleau is an African–American, who has been a salaried employee of Sikorsky since 1995. He graduated from Central Connecticut State University in 1993 with a B.S. degree in Industrial Technology Engineering. Prior to college, he had worked at Sikorsky as an hourly employee, building helicopters. After graduating from college, he returned to Sikorsky as an hourly employee until 1995. (Am.Comp. ¶ 54.)

In April, 1995, a permanent position for Senior End User Consultant in the Manufacturing Engineering Department, at labor grade 45, was posted. Prioleau interviewed and was selected for this position. However, upon commencing work with Sikorsky, he learned that his position had been down-graded to a labor grade 43 and that his title was simply End User Consultant, despite the fact that he claims he was performing all of the job duties of a Senior End User Consultant and that he met the qualifications for a labor grade 45. (Am. Comp.¶ 55.) Prioleau maintains that, at all times, he was qualified for a labor grade 45 but was denied this position and compensation because of his race. His partner, Jonathan Carroll, who is Caucasian, held the position of Senior End User Consultant at grade 45, but, according to Prioleau, his qualifications were no greater than those of Prioleau. (Am.Comp.¶ 58.)

Prioleau complained to management, including Stan Biga, who is Caucasian. In response to Prioleau's inquiry about his compensation, Biga informed him that he had "better stop pushing it" and that he should just be happy that Sikorsky was giving him a job. (Am.Comp.¶ 56.) Prioleau also complained about his labor grade to management using Sikorsky's DIALOG system, a process whereby employees can communicate their concerns to management on a confidential basis and receive a response within two weeks. However, when Prioleau complained via this system, it took management two and one-half months to respond. Management advised Prioleau that his "organizational skills" were not at the required level for labor grade 45 and that he would be considered again in three months. Three months later, he was complimented on the improvement in his organizational skills and given a 10% raise, without his labor grade being changed. (Am.Comp.¶ 57.)

When Carroll left the job of Senior End User Consultant, Prioleau inquired of his supervisor, John Churchman, about the position, to which Churchman replied, "It's not going to happen, Keith." (Am.Comp. ¶ 58.) About this same time, Prioleau learned that Churchman had spoken with his co-worker, Debra Lavery, about whether she wanted this position. Lavery had no experience as an End User Consultant and had worked in an entirely different group as an executive secretary. Prioleau then complained to Sikorsky's Human Resources and was told by Beth Amato in that department that she would "take care of things." (Am.Comp.¶ 59.) In January, 1997, Prioleau finally received the promotion to Senior End User Consultant at labor grade 45. Upon advising Prioleau of his promotion, Churchman remarked "I don't think you deserve it, but here's your promotion." (Am.Comp.¶ 60.)

Prioleau was then assigned a new partner and office-mate, Kenneth MacArthur, who is Caucasian. Despite the fact that MacArthur started at Sikorsky at the same time as Prioleau and that Prioleau was training him and allegedly had more computer skills, MacArthur held a higher labor grade, 46, and received a salary $12,000 higher than Prioleau's salary. (Am.Comp.¶ 61.)

In May of 1997, while Prioleau and MacArthur were sharing office space, Prioleau overheard MacArthur state to someone on the telephone, "Why did you lock the f-ing screen door? ... I can't believe you f-ing did that! What are you scared some nigger is going to come get you?" (Am. Comp.¶ 62.)

Thus, based on the allegations of the amended complaint, Prioleau's claims of discrimination relate to three incidents: (1) his initial hiring at Sikorsky at a lower grade and salary because of his race; (2) his receiving a lower salary than similarly

situated Caucasian employees; and (3) on one occasion, being subjected to racial harassment by his co-worker.[1] The facts pertinent to each claim will be discussed below.

### Discussion

In its motion for summary judgment, Sikorsky asserts that it is entitled to summary judgment on Prioleau's first two claims because the undisputed material facts show that any discrepancy in labor grade assignment or pay between Prioleau and fellow Caucasian employees was based on factors other than race. As to Prioleau's claim of racial harassment, Sikorsky asserts that it is entitled to summary judgment because the matter complained of does not constitute actionable harassment under Section 1981 or Title VII.

### I. Discriminatory Hiring Claim

#### A. Prioleau's Title VII Claims Are Time–Barred

Initially, Sikorsky argues that Prioleau's Title VII claims relating to his hiring in 1995 as an End User Consultant are time-barred because a discrimination charge was not filed within 300 days of the alleged discrimination, and, therefore, his hiring claims can only be pursued under Section 1981. Plaintiff has not responded to this argument. The Court agrees with Sikorsky that Prioleau's claims of discriminatory hiring are barred by the 300–day limitations period of Title VII, 42 U.S.C. § 2000e–5(e)(1), since Prioleau's charge of discrimination was not filed with the Equal Employment Opportunity Commission until June 24, 1997. (Am.Comp.¶ 22.) *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2072, 153

L.Ed.2d 106 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765, n. 4 (2d Cir.1998). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp.,* 122 S.Ct. at 2072. However, a three-year statute of limitations applies to Prioleau's Section 1981 claim, and therefore his claim of discriminatory hiring in violation of Section 1981 is not time-barred. *See Mian ·v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993).

#### B. Prioleau's Section 1981 Claim

■ Turning to the merits of his discriminatory hiring claim under Section 1981, Sikorsky next argues that it is entitled to summary judgment for two reasons: (1) Prioleau cannot establish a prima facie case of race discrimination under Section 1981 because he and Carroll were not similarly situated; and (2) he cannot prove that Sikorsky's non-discriminatory reasons for assigning his labor grade and salary are false and that the real reason was purposeful race discrimination.

Section 1981 claims are analyzed under the same burden-shifting framework as Title VII cases. *Keene v. Hartford Hospital,* 208 F.Supp.2d 238, 247 (D.Conn.2002). Prioleau must first establish a prima facie case of discrimination based upon his race. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to establish a prima facie case of

---

1. Plaintiff's complaint does not include any claims of discrimination relating to his hiring in 1993 by Butler Services, as a subcontractor of Sikorsky, as opposed to his being hired directly by Sikorsky. To the extent plaintiff may now be asserting such a claim, it would be time-barred. *See Peters v. City of Stamford,* No. 3:99CV764, 2003 WL 1343265, st *6 (D.Conn. Mar. 17, 2003); *see also* Discussion at 7, *infra.*

discrimination, Prioleau must show that (1) he is a member of a protected class; (2) he was competent or qualified to perform the job; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). In order to survive a summary judgment motion at the prima facie stage, Prioleau carries only a minimal burden. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Graham*, 230 F.3d at 38. If Prioleau succeeds, a presumption of discrimination arises and the burden shifts to Sikorsky to proffer some legitimate, non-discriminatory reason for the adverse decision or action. *McDonnell–Douglas v. Green*, 411 U.S. at 802, 93 S.Ct. 1817. If Sikorsky proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and Sikorsky "will be entitled to summary judgment ... unless [Prioleau] can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000).

### 1. Prioleau's Prima Facie Case

Here, Sikorsky does not challenge Prioleau's ability to satisfy the first three prongs of his prima facie case: Prioleau, an African American, is a member of a protected class; he was competent to perform the job of End User Consultant; and he received less pay and was classified at a lower labor grade than another employee, Carroll, who is Caucasian. Instead, Sikorsky asserts that there are no genuine issues of material fact that his hiring at a labor grade 43, instead of a labor grade 45, did not occur under circumstances giving rise to an inference of discrimination on the basis of his race. Sikorsky states that the undisputed facts show that Prioleau did not have the required three years of experience for a labor grade 45[2] and that the person who was hired for that position had superior qualifications and, thus, was not "similarly situated."

Prioleau responds by pointing to the history of discriminatory hiring practices within the Manufacturing Engineering Department, including his own experience of being hired indirectly through a subcontractor, Butler Service Group, at a significantly lower salary,[3] as well as the admission of a senior manager that this Department had not hired an African American as a salaried employee in over five years. (Pl.'s Aff. ¶¶ 2–5.) He also cites Sikorsky's hiring statistics for the Manufacturing Engineering Department, which showed that out of 53 new employees hired in 1995, only one was an African American. (Pl.'s Aff. ¶ 7.) Prioleau maintains that he met all of the qualifications for the posted position of Senior End User Consultant, labor grade 45, given his prior work experience[4] (Pl.'s

2. In February, 1995, Sikorsky electronically posted the job position of Senior End User Consultant, labor grade 45, in the Manufacturing Engineering Department. (Pl.'s Aff. ¶ 8 & Ex. F; Greatheart Decl. ¶ 2.) The posting indicated that the position required, *inter alia*, three to five years experience, as well as a B.S. degree in industrial management or business administration. (Greatheart Decl. ¶ 3 & Ex. B.)

3. Although a claim of discrimination relating to this discrete act is time-barred, *see* Discussion at 7, *supra*, that does not preclude Prioleau from using the prior acts as background evidence in support of a timely claim. *National R.R. Passenger Corp.*, 122 S.Ct. at 2072.

4. Prioleau had been employed by Sikorsky as a temporary employee, a Junior Computist Engineer, during the time he was in college. (Pl.'s Aff. ¶ 2.) Prioleau also had past experience as an avionic technician with the United

Aff. ¶ 11), and the fact that he had been performing all of the duties of that position for the very same manager in his capacity as a sub-contract employee. (Pl.'s Aff. ¶ 8.) To the extent that Sikorsky claims that Prioleau did not have the required mandatory qualifications, Prioleau cites to the fact that Allen Johnson, who is Caucasian and who was a Senior End User Consultant, did not have the "mandatory" college degree. (Pl.'s Aff. ¶ 11.) Additionally, Prioleau states that the position for which he was hired, labor grade 43 End User Consultant, was never job-posted in accordance with company policy, and that the only position available, and for which he interviewed, was the labor grade 45 Senior End User Consultant position. (Pl.'s Aff. ¶ 12.) He asserts that he met all of the qualifications for the posted position and that the position was down-graded only after he interviewed. Prioleau also cites to the comment by a senior African American manager at Sikorsky, who told him that this was the way the "good old boy network" worked and that Sikorsky had offered him a low salary and labor grade in hopes that he would turn down the job. (Pl.'s Aff. ¶ 9.)

Prioleau also points to Sikorsky's hiring of Jonathan Carroll,[5] who is Caucasian, as the labor grade 45 Senior End User Consultant less than one month after Sikorsky refused to hire Prioleau for that position and argues that he was equally as qualified as Carroll to perform the labor grade 45 position. (Pl.'s Aff. ¶ 16.). Prioleau states that he performed the same work as Carroll, as evidenced by the Department's workplans and written assignments (Ex. G & H), yet he was paid $14,000 less than Carroll. (Pl.'s Aff. n. 1 & Ex. G & H.)

We find that Prioleau has presented sufficient evidence to satisfy his minimal prima facie burden that his hiring at a lower grade and salary than the posted position occurred under circumstances giving rise to an inference of discrimination. Sikorsky has focused solely on the question of whether Prioleau and Carroll were similarly situated, as that phrase has been interpreted by the Second Circuit. *See Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir.1997); *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001). This is clearly a relevant consideration, but not the only consideration. Prioleau has presented sufficient evidence concerning his relevant experience as compared to Carroll's, to raise a jury question as to whether they were similarly situated. However, even assuming that they were not, we find that Prioleau has presented

States Army during Operation Desert Storm and worked for two years as an Electronic Test Technician for F.A.S.T. Consulting Engineering. (Greatheart Decl., Ex. D—Prioleau Resume.)

According to Sikorsky's Job/Pay History Report (Bucknall Decl. Ex. F), Prioleau worked for Sikorsky as an hourly employee from October 27, 1986, until August 21, 1987. Sikorsky's records indicate that he was "rehired" on January 11, 1993, at the labor grade of 34 and an annual salary of $22,527. (Bucknall Decl. Ex. F.) On July 30, 1993, their records indicate "SUMMER/TEMP/CO–OP ASSGNMN," at the same labor grade and salary. (*Id.*) Apparently, this refers to his employment by Butler to work at Sikorsky.

Prioleau remained in that position until he was hired as an End User Consultant in 1995 at labor grade 43, at a salary of $35,005.

**5.** Carroll received a B.S. degree in Information Systems and Management from Fairfield University in May, 1991. He was hired by Sikorsky on August 5, 1991 as a Junior Engineering Administrator, labor grade 41, and was promoted to Administrator—Engineering in June, 1993, labor grade 42, with a promotion a year later to labor grade 44. On May 1, 1995, with just less four years of experience with Sikorsky, he was promoted to Senior End User Consultant, labor grade 45, at a salary of $49,080. (Bucknall Decl., Ex. D.)

sufficient other evidence to meet his minimal prima facie burden of raising an inference of discrimination. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001).

#### 2. *Prioleau's Showing of Pretext*

Sikorsky next asserts that, even if Prioleau can establish a prima facie case of discrimination, he cannot carry his burden of showing that Sikorsky's proffered non-discriminatory reasons for hiring him at a labor grade 43 were false and that the real reason was his race.

"Plaintiff's prima facie case plus a showing of pretext may defeat a properly supported summary judgment but will not always do so. *Lizardo v. Denny's Inc.*, 270 F.3d 94, 103 (2d Cir.2001). Instead the court must determine whether plaintiff's proof could convince a reasonable fact-finder that discrimination motivated his employer. *Id.* In making this determination, the court should consider the strength of the prima facie case, the proof that defendant['s] explanation was false, and any other probative proof in the record." *Allah v. City of New York Dept. of Parks & Recreation*, 47 Fed. Appx. 45, 48 (2d Cir.2002).

Sikorsky asserts as the non-discriminatory reason for hiring Prioleau at a labor grade 43, instead of a labor grade 45, his lack of the required years of experience. However, the job posting notice does not indicate the type of experience required or when and where this experience had to have been obtained. (For example, it did not specify only experience after college.) Although at the time Prioleau applied for the Senior End User Consultant position, he had less than three years of work experience after graduating from college, he had a year of experience working for Sikorsky from 1986 to 1987 and at least another year of experience as an electronic

test technician from 1984 to 1985. Had Sikorsky given him credit for this past experience, his years of experience would have exceeded the required three years minimum.

Significantly, in discussing Carroll's experience, Sikorsky cites Carroll's prior experience with IBM (as an hourly marketing sales assistant during college) and his post-graduate education, but makes no mention of Prioleau's work prior to graduation from college, even with Sikorsky, nor to his post-graduate studies. *See* Def.'s 9(c)1 St. ¶ 15.

Additionally, Prioleau points to the fact that the down-graded position for which he was hired had not even been posted; he cites to the comment of a senior African–American manager concerning the "good old boy network;" and he has produced historical hiring statistics of the Manufacturing Engineering Department. He has also produced voluminous exhibits showing his work assignments as well as Carroll's. (Pl.'s Aff. Ex. G & H.) A cursory review of these exhibits indicates to the Court that there is at least an issue of fact as to whether he and Carroll were performing the same job functions but at significantly different salaries.

The evidence produced by Prioleau, when viewed in its totality and in the light most favorable to him as the non-moving party, is sufficient to create genuine issues of material fact as to whether Sikorsky's proffered reason for hiring Prioleau at a lower grade and salary was a pretext for discrimination. Therefore, we deny defendant's motion for summary judgment on this Section 1981 claim.

#### II. *Discriminatory Compensation Claim*

█ Prioleau's next claim is asserted under both Section 1981 and Title VII for Sikorsky's alleged discrimination against him with respect to compensation. Sikor-

sky again attempts to limit this claim to a comparison of Prioleau's 1997 salary with that of one of his co-workers, Kenneth MacArthur, and contends that Prioleau cannot carry his prima facie burden of showing that they were "similarly situated" or that the setting of Prioleau's salary occurred under circumstances giving rise to an inference of discrimination. Additionally, Sikorsky maintains that Prioleau cannot show that Sikorsky's non-discriminatory reasons for the differences in their salaries—that being the differences in their performances and levels of experience—were a pretext for discrimination.

We do not read Prioleau's salary discrimination claim as narrowly as Sikorsky does. Although the class allegations are no longer part of the amended complaint, Counts I and II remain. In these, Prioleau alleges a pattern and practice of discrimination by Sikorsky in compensating African–American employees less than Caucasian employees who hold the same or similar positions or positions that entail similar responsibilities. (Am.Comp.¶¶ 117, 119). Additionally, Prioleau alleges a discriminatory promotion policy. (*Id.*) More specifically, he complains of Sikorsky's failure to promote him at an earlier date and of the disparity in compensation that he received from 1995 forward. In his affidavit, Prioleau gives examples of projects that he completed, for which he was not given credit (Pl.'s Aff. ¶¶ 13, 19, 20), and the inferior performance ratings that he received (Pl.'s Aff. ¶ 14), which would have impacted his salary. He also cites to the increased salary that Carroll received from 1995 to 1996, even though they were performing the same job. (Pl.'s Aff. ¶ 15, Ex. G & H.) He cites to the disparity in his salary in 1997 compared to that received by Kenneth MacArthur, whom he was training as an End User Consultant.[6] (Pl.'s Aff. ¶ 26.) Prioleau has provided statistical evidence and has proffered his expert's report in support of his claim that African–American employees have historically received lower salaries and lower performance ratings than white employees.[7] (Pl.'s Aff. ¶ 15 & Ex. 1).

### A. Prioleau's Prima Facie Case

Sikorsky asserts that Prioleau cannot demonstrate a prima facie case of discrimination because he cannot show that he and MacArthur were similarly situated in all material respects or that the setting of his salary in 1997 otherwise occurred under circumstances giving rise to an inference of discrimination.

Sikorsky also points to the fact that Kevin Sanders, who is African American, held the position of Senior End User Consultant, labor grade 45, in the Spring of 1997, and was paid significantly more than Prioleau.[8] (Def.'s 9(c)1 St. ¶ 16.)

---

**6.** Prioleau states that in January, 1997, Kenneth MacArthur was transferred into his group. None of MacArthur's alleged experience as a mechanical or manufacturing engineer prepared him to be an End User Consultant, yet he was paid more than $15,000 more than Prioleau, yet Prioleau was required to train him to do the job. (Pl.'s Aff. ¶ 26.) According to Sikorsky's Job/Pay History Report, MacArthur began employment with Sikorsky in March 1995 as a Senior Manufacturing Engineer, labor grade 46, and a starting salary of $48,396.00. In March, 1997, there was a department change, but MacArthur's job title remained the same, as did his pay grade. His salary at that time

was $52,848.00. (Bucknall Decl. Ex. B.) As of February 1, 1997, Prioleau was earning $41,256.00 as a Senior End User Consultant, labor grade 45. (Bucknall Decl. Ex. F.)

**7.** In light of the other evidence presented by Prioleau, we express no opinion at this time as to the probative value of this evidence or whether this statistical evidence is "sufficiently substantial to raise an inference of causation." *See Malave v. Potter*, 320 F.3d 321, 325–26 (2d Cir.2003).

**8.** Sanders, who had been with Sikorsky as a salaried employee since 1984, was earning

Because we do not view Prioleau's salary discrimination claim as limited to a comparison of his salary with that of MacArthur, it is not necessary for him to show that he and MacArthur were similarly situated. Prioleau has produced sufficient evidence to raise an inference of discrimination in order to meet his de minimis burden at the prima facie stage. The fact that Sikorsky can point to another African American employee with substantially more experience than Prioleau who was compensated at a higher rate does not undermine his claim. "Since Title VII's principal focus is on protecting individuals, rather than a protected class as a whole, an employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the employee's group favorably...." *Graham*, 230 F.3d at 43–44 (internal citations omitted).

### B. Prioleau's Showing of Pretext

Sikorsky further argues that, even assuming Prioleau can prove a prima facie case of race discrimination concerning his compensation, Sikorsky had a legitimate, non-discriminatory reason for paying Prioleau less than MacArthur—their relative performance and past experience.

As discussed above, Prioleau has provided sufficient evidence in support of his claim of discriminatory compensation to create a triable issue as to pretext. Viewing the evidence in the light most favorable to Prioleau, he has provided evidence of discriminatory performance evaluations, statements by management concerning the "good old boy's network," statistical evidence supported by his expert's report of under-representation of African–American employees in the Manufacturing Engineer-

ing Department, exhibits showing similar work assignments being performed by Caucasian employees who were receiving significantly higher salaries than he, evidence that company policies were violated to accommodate the transfer or promotion of Caucasian employees. When this evidence is viewed in its totality, and in a light most favorable to Prioleau, we find genuine issues of material fact that preclude the granting of summary judgment in favor of Sikorsky. Sikorsky has attempted to pigeon-hole Prioleau's pattern and practice claim of discriminatory compensation into a comparison of Prioleau's salary to that of MacArthur at a single point in time. Prioleau's claim is broader than that.

We conclude that Prioleau has presented sufficient evidence to create a triable issue as to pretext. We, therefore, deny Sikorsky's motion for summary judgment as to this claim.

### III. Prioleau's Hostile Work Environment Claim

■ In his amended complaint, Prioleau cites to a racially derogatory comment made in his presence by his co-worker, MacArthur. Sikorsky argues that it is entitled to summary judgment on his claim of hostile work environment because Prioleau cannot establish that the workplace was permeated "with discriminatory intimidation, ridicule, and insult, [so as to alter the conditions of employment by] creat[ing] an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65,

---

$49,050 in March of 1997, at which time Prioleau was earning $41,256. (Bucknall

Decl. Ex. E & F.)

106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Additionally, Sikorsky maintains that Prioleau cannot prove that the single offensive comment by a co-worker should be imputed to Sikorsky. *Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766.

Prioleau has not responded to this argument. We agree with Sikorsky that the one incident of offensive conduct by a co-worker does not translate into an actionable hostile work environment claim under either Section 1981 or Title VII. Accordingly, we grant defendant's motion for summary judgment as to Prioleau's hostile environment claim.

### Conclusion

Defendant's Motion for Summary Judgment [Doc. # 122] is GRANTED as to Plaintiff Prioleau's hostile work environment claim and his Title VII claim for discriminatory hiring in 1995. In all other respects, Defendant's Motion is DENIED.

This case will be placed on the trial calendar for June or July, 2003. A separate trial notice advising counsel of the date for jury selection will be issued in the near future.

SO ORDERED.